

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00093-CV

_____

ELEANOR FOX DAVIS AND BARNES DAVIS, Appellants

V.

WILLIAM EARL NORRIS AND MARTHA SUE NORRIS, Appellees

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2006-881

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

In pursuit of the sale of a 545-acre farm in Wood County, from William Earl Norris and wife, Martha Sue Norris, to Eleanor Fox Davis,[1] to take place in one certain closing and one possible closing, the Norrises and Davis signed three different contracts to sell, all dated November 5, 2003. The contemplated initial closing was held, but a subsequent dispute arose concerning an option to purchase the balance of the farm and whether the option was properly exercised.

Davis sued for specific performance or damages. The Norrises responded with their motion for summary judgment based on the single ground that Davis failed to timely exercise the option. On August 13, 2010, the trial court granted the Norrises summary judgment that Davis take nothing.[2]

From that summary judgment, Davis appeals, asserting that summary judgment was error because the stated nine-month notice was not a condition to the exercise of the option, that Davis'

---

[1]Davis' husband, Barnes Davis, did not participate in any of the transactions at issue, but joins this appeal. We will refer to Eleanor Fox Davis as Davis, though the term will be inclusive of Mr. Davis, as appropriate.

[2]The judgment awarded the Norrises $16,735.02 in attorney's fees, plus $5,000.00 in attorney's fees for an appeal to this Court, and $2,500.00 for an appeal to the Texas Supreme Court. On August 31, 2010, the Norrises moved for a "judgment nunc pro tunc" requesting an additional award of interest. *See* TEX. FIN. CODE ANN. § 304.001 (West 2006). The trial court rendered judgment September 3, 2010, adding post-judgment interest at a rate of five percent. Post-judgment interest is statutorily mandated and is recoverable even if the judgment does not mention it. *Nat'l Union Fire Ins. Co. v. Wyar*, 821 S.W.2d 291, 297 (Tex. App.—Houston [1st Dist.] 1991, no writ); *El Universal, Compania Periodistica Nacional, S.A. de C.V. v. Phoenician Imports, Inc.*, 802 S.W.2d 799, 804 (Tex. App.—Corpus Christi 1990, writ denied); *Crenshaw v. Swenson*, 611 S.W.2d 886, 892 (Tex. App.—Austin 1980, writ ref'd n.r.e.). The second judgment is labeled "judgment nunc pro tunc," but was rendered while the trial court still had plenary power.

2

exercise of the option was effective, that fact issues exist concerning which contract applies (and thus which option controls) and whether there was a waiver of the nine-month notice requirement, and that summary judgment was improper because it did not address Davis' claim for damages. We reverse the summary judgment and remand this case to the trial court for further proceedings, because (1) the option in the third contract is the controlling option, and (2) the contract is ambiguous on what action would constitute an exercise of the option.[3]

The Norrises' motion for summary judgment was of the "traditional" sort. To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979). To gain a traditional summary judgment, the defendant must conclusively negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Sci. Spectrum v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985); *see Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

_____

[3]Because these conclusions are dispositive of this appeal, it is not necessary to address Davis' remaining issues.

3

*(1)    The Option in the Third Contract Is the Controlling Option*

The dispute in this case centers around the option to purchase the remainder of the Norrises' farm. On November 5, 2003, the parties signed three contracts—contracts which are not individually dated. In the first contract, Davis contracted to purchase 215.405 acres of the approximately 545-acre farm owned by the Norrises. In the second contract, Davis contracted to purchase 9.5 acres and a house. This second contract is sometimes called the homestead contract by the parties, as its purpose was to carve out homestead property so Davis could claim a homestead exemption for tax purposes. In the third contract, Davis contracted to purchase "210±" acres, which the parties agree is intended to be the balance of the land to be part of the original purchase, beyond the homestead property. The parties closed on the homestead contract and the third contract sometime in December 2003. This left the option to purchase pending.

The options set out in the first contract and the third contract would allow Davis to purchase, on or before January 1, 2007, essentially the remainder of the 545-acre farm not already purchased. Exhibit A made part of the first contract was signed and dated by Davis November 3, 2003, and by the Norrises November 4, 2003. Exhibit A made part of the third contract was signed by all the parties and dated only by the Norrises November 3, 2003. The Exhibit A attached to the *third* contract—but not the exhibit attached to the *first* contract—also contained the handwritten notation that has become a principal focus of this case: "SELLER WILL HAVE 9 MONTHS NOTICE BEFORE BUYER WILL CLOSE." All parties initialed this notation.

4

Some years later, by letter dated March 20, 2006, and mailed March 28,[4] Davis announced to the Norrises her intent to exercise the option. The letter stated, "this letter provides nine (9) months notice" and provided that closing would be held December 20, 2006. About August 22, 2006, the Norrises mailed Davis a letter stating that, "[a]s of this date we have not received an option contract" and describing the requirements of an option to purchase. About November 15, 2006, the Norrises' attorney sent a letter to Davis stating that "[m]y clients do not agree that the terms of Exhibit A create an option in your favor to purchase any of their property." The Norrises did not appear at the time and place designated by Davis for a closing.

The first issue we must decide is which contract to interpret. Davis argues there is a fact issue concerning whether the Third Contract replaced the First Contract, modified the First Contract, or is an independent contract. The Norrises argue the evidence conclusively establishes that the Third Contract replaced the First Contract. The determination of which contract controls depends on whether the contracts were intended to be interpreted together as a single agreement, whether one contract replaced the other, or whether one contract modified the other.

In *Courage Co. v. Chemshare Corp.*, the Fourteenth District Court of Appeals held two contracts involving computer software, which were highly integrated and referenced each other, were both part of the same agreement and the latter contract did not supersede the first. 93 S.W.3d 323 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In this case, there is no evidence

---

[4]The record contains a certified mail receipt containing the date the letter was mailed.

the contracts were intended to be interpreted together, forming a single agreement. Neither contract in this case makes any reference to the other contract. With the exceptions of the Exhibit A of both contracts, the contracts are otherwise boilerplate real estate form contracts for purchase of ranch land or farms. We reject Davis' argument that the First Contract and the Third Contract were intended to be interpreted together.

Davis alternatively argues that a fact issue exists because the Exhibit A to the First Contract was signed after the Exhibit A to the Third Contract.[5] While the dates on the two exhibits make up more than a scintilla of evidence that the First Contract was signed after the Third Contract, the summary judgment evidence conclusively establishes the Third Contract replaced the First Contract. As argued by the Norrises, the dates on the contracts do not establish an order of execution. All three contracts were executed November 5, 2003. Although she could not remember when each contract was signed, Davis testified in her deposition: "We had a contract for 215 plus or minus acres. We wanted to homestead the house and 10 acres. Therefore, the first contract was divided into two contracts." In her deposition, Norris testified that "they separated the contract" and later testified the contract was divided "after it was in the title company." Both parties testified the First Contract was signed first. Further, the parties concede that no closing was conducted on the First Contract.

We agree with the Norrises that the Third Contract was a novation that replaced the First

---

[5]Exhibit A to the First Contract was signed November 3 by Davis, and November 4 by the Norrises. Exhibit A to the Third Contract was signed November 3 by the Norrises, but was signed without a date by Davis.

6

Contract. A novation is the substitution of a new agreement in place of an existing agreement. *Fulcrum Cent. v. Autotester*, *Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.). The summary judgment evidence conclusively establishes the Homestead and Third Contracts were novations of the First Contract. Davis concedes "where there are two agreements that address the identical topic, but have differing terms, the one which is executed later controls." *See Midwest Med. Supply Co. v. Wingert*, 317 S.W.3d 530 (Tex. App.—Dallas 2010, no pet.). Thus, the Norrises established, as a matter of law, that the Third Contract governs the agreement of the parties.

*(2) The Contract Is Ambiguous on What Would Constitute an Exercise of the Option*

At trial, both parties assumed the Third Contract required a nine-month notice to exercise the option.[6] The Norrises' traditional motion for summary judgment is based solely on this assumption. Davis argues on appeal, for the first time, that the nine-month notice provision is not a term of accepting the option that must have been strictly fulfilled.[7]

---

[6]In her response, Davis argued that, because the option contained in the First Contract should govern, there was a fact question concerning whether she was obligated to give nine months' notice before closing.

[7]Davis' first issue is as follows: "The trial court erred in entering summary judgment based upon the nine months' notice of closing for the underlying real estate contract being a condition to exercise the option." Davis argues that "[t]he disputed term is a term for the underlying contract and does not apply to either option or the exercise of either option." Davis later argued:

> Here the trial court improperly applied the nine months notice as a condition of the exercise of the option when it actually applied to the underlying real estate contract. The trial court ignored the fact that the letter exercising the option was unqualified, unambiguous, and strictly complied with the options in both Exhibit A's.

The issue is assigned for our review.

7

At oral argument, the Norrises asserted that this issue was not presented to the trial court. To the extent the Norrises argue that the error is not preserved for our review, we conclude Davis did not forfeit this issue by failing to raise it in the trial court.[8] The Norrises were required to establish as a matter of law that they were entitled to summary judgment. *See* TEX. R. CIV. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d 671; *Baubles & Beads v. Louis Vuitton*, *S.A.*, 766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ). The Norrises' motion for summary judgment argued that, because Davis failed to exercise the option in strict compliance with the option,[9] no contract was formed to bind the parties to close a sale of the optioned property.[10] The motion for summary judgment did not include any alternative theories beyond the

---

[8]In reviewing an order granting summary judgment, we are ordinarily restricted to the arguments expressly presented to the trial court in the written motion for summary judgment and the response. TEX. R. APP. P. 33.1; TEX. R. CIV. P. 166a(c); *see Clear Creek Basin Auth.*, 589 S.W.2d at 677; *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.); *see also Martinez*, 941 S.W.2d at 912.

[9]"Acceptance of an option must be unqualified, unambiguous, and strictly in accordance with the terms of the agreement." *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Atterbury v. Brison*, 871 S.W.2d 824, 829 (Tex. App.—Texarkana 1994, writ denied) (Cornelius, C.J., concurring); *see Chambers v. Hunt Petroleum Corp.*, 320 S.W.3d 578, 583 (Tex. App.—Tyler 2010, no pet.); *Besteman v. Pitcock*, 272 S.W.3d 777, 784 (Tex. App.—Texarkana 2008, no pet.). "Any failure to exercise an option according to its terms, including an untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection." *Atterbury*, 871 S.W.2d at 829; *see Hutcherson v. Cronin*, 426 S.W.2d 638 (Tex. App.—Tyler 1968, no writ); *Lambert v. Taylor Tele. Co-operative*, 276 S.W.2d 929 (Tex. App.—Tyler 1955, no writ). A timely and proper acceptance of an option, though, creates a binding bilateral contract. *Sinclair Ref. Co. v. Allbritton*, 218 S.W.2d 185, 188 (Tex. 1949); *Luccia v. Ross*, 274 S.W.3d 140, 149 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

[10]An option consists of (1) an underlying contract that is not binding until accepted, and (2) a covenant to hold open to the optionee the option to accept. *Faucette v. Chantos*, 322 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "When the optionee gives notice or otherwise complies with the terms and conditions of the option—regardless of the existence of consideration for the option—a bilateral executory contract is formed, one party having the duty to convey and the other the duty to pay." *Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 854 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

nine-month-notice issue. Thus, in order to be entitled to summary judgment, the Norrises were required to establish, as a matter of law, that the nine-month-notice provision was a term for exercising the option and that Davis failed to comply with the provision.

The Texas Supreme Court has held "summary judgments must stand or fall on their own merits, and the non-movant's failure to except or respond cannot supply by default the grounds for [a traditional summary judgment]." *McConnell v. Southside Indep. Sch. Dist*., 858 S.W.2d 337, 342 (Tex. 1993); *see M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). Because the Norrises had the obligation to establish, as a matter of law, that a nine-month notice was required to exercise the option and that Davis failed to comply with it, Davis did not forfeit this argument by failing to raise it in her response. We may review the nine-month-notice issue.

In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To achieve this objective, we should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id*. Unless the contract is ambiguous, the court will enforce it as written. *Id*. A court may not rewrite the parties' contract or add to its language under the guise of interpretation. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court

9

will construe it as a matter of law. *Coker*, 650 S.W.2d at 393; *Guerrero v. Guerra*, 165 S.W.3d 778, 782 (Tex. App.—San Antonio 2005, no pet.). If, however, a contract is capable of more than one reasonable interpretation, it is ambiguous. *Schaefer*, 124 S.W.3d at 157; *Guerrero*, 165 S.W.3d at 782. Whether a contract is ambiguous is a question of law that we review de novo. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). Granting summary judgment based solely on an ambiguous contract is improper because the intent of the contracting parties is an issue of fact. *Claxton v. Lake Fork Water Control & Improvement Dist. No. 1*, 246 S.W.3d 381, 385 (Tex. App.—Texarkana 2008, pet. denied).

It has long been held that, because an option to purchase property is a unilateral benefit to the optionee, options must be exercised strictly according to the terms of the agreement. *Zeidman v. Davis*, 342 S.W.2d 555, 558 (1961); *Johnson v. Portwood*, 34 S.W. 596, 598 (Tex. 1896). "It is a well-settled principle that strict compliance with the provisions of an option contract is required." *Besteman*, 272 S.W.3d at 784.

Here, if the prospective purchaser is to comply strictly with the terms of the option agreement, the terms of that option agreement must be more fully determined than has been done at this stage of the proceedings. A contract is ambiguous when its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *See Skelly Oil v. Archer*, 356 S.W.2d 774, 778 (Tex. 1961).

Neither party takes the position that the contract itself is ambiguous, and the issue of

10

ambiguity did not arise in the trial court. In most circumstances, to consider a matter not raised by a party would lead this Court into the Serbonian Bog of unassigned error proscribed us by the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(f). In a civil case, this Court is generally prohibited from addressing unassigned error. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998). The issue of contractual ambiguity, however, can be considered sua sponte by a reviewing court. *Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009); *see also Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (court can decide on its own motion that contract is ambiguous).

The contract is at least unclear on what is required to exercise the option. The applicable Exhibit A provides, in full, as follows:

I. Eleanor Fox Davis and Assigns, Buyer, has Option and First Right of Refusal until January 1, 2007 to purchase a total of up to 327 +/- acres (being the remaining amount of acres owned by William Earl and Martha Sue Norris, Seller, of the original 545 +/- acres located at 1336 FM 69, Quitman, Texas 75783) at a purchase price of $840.98 per acres.

II. Sellers reserve the right to retain a total of up to 147 +/- (being described as 0626 H. Wilson Survey Tract 2 147.3 acres) acres in the southeast section of the remaining 327 +/- acres.

III. Easement to be identified for the gas line from the meter to the house.

IV. Further, both Buyer and Seller hereby agree to institute and make permanent the following Deed Restrictions to the 545 +/- acres in entirety to become effective on the executed date of this contract:
*SELLER WILL HAVE 9 MONTHS NOTICE BEFORE BUYER WILL CLOSE.*
No Pig Farming Operations

11

No Chicken Farming Operations
No RV Parking or RV Storage Operations
No Permanent Trailer Homes
No Mobile Homes
No Commercial Storage Operations
No Homes under 1,000 square feet with the exception of any present
housing structures located on the northeast side of the property.

(Handwritten provision italicized). The handwritten, nine-month-notice provision does not explicitly say that it is a condition to the exercise of the option, but there is no provision that explicitly sets out the method for exercise. A deadline of January 1, 2007, is explicitly set out, but the contract is unclear on precisely what it is a deadline for. Is it a deadline for notice of exercise, or of closing on the option property? And, though logically the nine-month-notice provision and the deadline of January 1, 2007, seem to be related, the contract is silent on the nature of that relationship. We conclude that an ambiguity exists as to the option that requires findings on the parties' intent on just what is required for the option to be exercised. Based on what is found in that threshold issue, it might require further findings on whether Davis did what was required to exercise the option and possibly whether there might have been some justification for any failure to take that step. Ambiguity exists.

We must affirm the summary judgment if any of the theories presented to the trial court and preserved for our review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). None of the theories presented to the trial court, however, are meritorious. All of the theories presented to the trial court are based on the assumption that the

nine-month-notice provision is a condition to the exercise of the option; and that has yet to be determined.

We reverse the summary judgment of the trial court and remand for proceedings consistent with this opinion.[11]

                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:        July 27, 2011
Date Decided:          October 25, 2011

---

[11]We make no ruling as to the enforceability of the option, ruling only that the current summary judgment must fail.