In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00376-CV
_____

**GUSTAVO TOMAS DORTA AND ANA MIRIAM DORTA, Appellants**

**V.**

**CARLOS RAVE AND LIGIA RAVE, Appellees**

**On Appeal from the County Court at Law No. 2**
**Montgomery County, Texas**
**Trial Cause No. 12-26257-CV**

**MEMORANDUM OPINION**

In this forcible detainer action, Gustavo Tomas Dorta and Ana Miriam Dorta appeal the trial court's judgment rejecting their claim that alleges they are entitled to immediately possess a residence in Porter, Texas. Because the evidence before the trial court established that the Dortas have a superior right to immediately possess the premises at issue, we conclude the County Court at Law should have granted the Dortas' petition. We hold the Dortas are entitled to immediate

1

possession of the premises at issue; therefore, we reverse and render judgment in the Dortas' favor.

Background

In 2002, the Dortas leased a house to Carlos and Ligia Rave. The house is located at 22873 Cumbre Drive in Porter, Texas, and was subject to a two-year lease. Under the lease, the Raves were obligated to pay one dollar per month in rent. The lease also had a holdover provision, which allowed the Dortas to terminate the lease on thirty days' written notice, and an option term that gave the Raves a right to purchase the property, if exercised. The lease's option provision, the term at issue in the parties' dispute, contains the following language:

> Lessee has the right of "first refusal" on purchase of this house. At the end of the first year of this lease, Lessee can exercise their option to purchase house at the accepted price. [I]f they don't want to exercise option[,] then lease will continue until termination. Lessor will finance purchase price less a 10% down payment at Lessee's option. Terms of mortgage will be for a 20 year pay-out, payable in monthly installments.

On the date the parties signed the lease, they executed a second document titled "General Agreement." The General Agreement, when construed with the option in the lease, further defines the option's terms, providing:

> [The Dortas] [a]gree to sell a house located at 22873-Cumbre Dr., Porter, Texas, 77365 to [the Raves]. The terms of the sale are as follows: the sale will not take place before November 21, 2003. The purchase price will be calculated by adding all expenses incurred by

2

[the Dortas] in regard to the house and adding 7 1/2% to the purchase price[,] [c]alculated annually. If not purchased in November, 2003- another 7 1/2% fee will accumulate in the purchase price. Part of expenses incurred by [the Dortas] will be a sum lent to [the Raves] at time of signing this agreement. The amount being twenty-two thousand dollars ($22,000.00) as witnessed by a promissory note[.] [I]f house is not purchased by [the Raves] by end of November 19, 2004, then house will be appraised and sold as soon as possible. The net gain on sale of house will be divided evenly between [the Dortas] and [the Raves].

The General Agreement also provides that "[t]ime is of the essence on all undertakings[,]" and that "[t]his is the entire agreement."

In February 2012, the Dortas notified the Raves to vacate the premises; when the Raves did not comply with the Dortas demand, the Dortas sent a letter that threatened eviction. When the Raves refused to leave, the Dortas sued them in the Justice of Peace Court in a forcible detainer action. Subsequently, the Justice of the Peace awarded the Dortas possession; the Raves perfected an appeal in the County Court at Law.

During the bench trial before the County Court at Law, two witnesses testified, Gustavo Dorta and Carlos Rave. Gustavo established that the Dortas bought the premises from Opal Handy in November 2002. On that same day, the Raves leased the premises from the Dortas. According to Gustavo, the Raves never exercised the option to purchase the property, he never signed a deed conveying the property to the Raves, and the Raves never arranged to finance their alleged

3

purchase with him. Gustavo testified that he terminated the Raves' lease as of March 2012, but the Raves continued to live on the property after they received his demand that they vacate the property.

Carlos Rave disputed Gustavo's testimony that the Raves failed to exercise their option to purchase the property. According to Carlos, he signed the General Agreement and the lease on the same day. Carlos explained that he and Gustavo were partners in a business that built custom homes. Under their business arrangement, Carlos explained that he received advances on the profits for the houses he worked on, and when a house sold, he and Gustavo split the profit. With respect to the option, Carlos testified that in August 2004, he told Gustavo he wanted to put $5,000 down on the house as a down payment, that Gustavo "agreed to it[,]" and that they went "forward." Carlos produced a receipt from Dorta Interests, L.P.; the receipt shows a credit in the amount of $5,000 for "down payment on house[.]" Beside those words, Carlos wrote "22873 Cumbre Dr[.]" Additionally, Carlos testified that Dorta had deducted payments, property owner association dues, and taxes on the house from their business's profits; however, there were no documents admitted in evidence documenting any mortgage payments, there is no testimony in the record identifying the amount of any of the Raves' mortgage payments, or documents evidencing the Raves' debt to the Dortas

4

for the purchase of the property at issue. According to Carlos, he asked Gustavo for a deed to the premises many times, but he never got one. Carlos testified that he never signed a deed of trust or a note for the balance on the property at issue.

Following the bench trial, the County Court at Law signed a judgment that denied the Dortas any relief on their claim for possession. Several months later, the trial court issued findings of fact and conclusions of law. In its findings, the trial court found that the Raves had exercised their option to purchase the premises, transforming their relationship with the Dortas "from a lease-purchase agreement to an executory contract for the purchase of the property." The Dortas timely filed their appeal. *See* Tex. R. App. P. 26.1(a)(4). The findings indicate that the trial court intended to dismiss the case for lack of jurisdiction, but the trial court's judgment appears to be a judgment on the merits of the Dortas' claim for possession.

## Issues

In three issues, the Dortas argue the trial court erred in entering a judgment in favor of the Raves. In issue one, the Dortas assert the trial court erred by considering and deciding which of the parties had a superior right to receive title. In issue two, the Dortas challenge the legal and factual sufficiency of a cluster of the trial court's findings and conclusions that relate to the trial court's

5

determination the Raves had exercised their purchase option on the property. In issue three, the Dortas argue the trial court erred in viewing their agreement with the Raves as an executory contract. Premised on their claim that the option was never exercised, the Dortas contend in their third issue that the notice of default provision in section 5.063 of the Texas Property Code—which applies to executory contracts conveying a residence—does not apply to their claim for forcible detainer. *See* Tex. Prop. Code Ann. § 5.063 (West Supp. 2013).

## Analysis

We first address issue two, as it is dispositive of the appeal. In issue two, the Dortas contend that the trial court's findings and its conclusion that the Raves exercised the option to purchase the property are supported by legally insufficient evidence. A forcible detainer action is a special proceeding governed by particular statutes and rules that were "created to provide a speedy, simple, and inexpensive means for resolving the question of the right to possession of premises." *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.); *see* Tex. Prop. Code Ann. §§ 24.001-24.011 (West 2000 & Supp. 2013); Tex. R. Civ. P. 738-755. Generally, the "sole issue" in the forcible detainer action is "who has the right to *immediate* possession of the premises." *Rice*, 51 S.W.3d at 709; *see* Tex. R. Civ. P. 746. "To prevail in a forcible detainer action, a plaintiff is not required to prove

6

title, but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession." *Rice*, 51 S.W.3d at 709.

The Dortas' petition asserts that the Raves occupied the premises under an agreement the Dortas terminated; in this case, the Dortas never alleged that the Raves forcibly acquired possession of the premise at issue. *Compare* Tex. Prop. Code Ann. § 24.002(a) (West 2000), *with id.* § 24.001(a) (West Supp. 2013). Although the Raves did not file an answer prior to the trial, whether the Raves exercised their option to purchase the premises was an issue tried by consent, as the Dortas never objected during trial when the Raves introduced testimony and evidence that addressed the purchase option. *See* Tex. R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991).

Under the terms of the parties' lease and General Agreement, the Raves had an option which, if exercised, gave them the right to compel the Dortas to sell the premises to them. "An option is a privilege or right which the owner of property gives another to buy certain property at a fixed price within a certain time." *Faucette v. Chantos*, 322 S.W.3d 901, 907 (Tex. App. —Houston [14th Dist.] 2010, no pet.). "Generally, acceptance of an option must be unqualified,

7

unambiguous, and strictly in accordance with the terms of the agreement." *Id.* at 908. As the optionees, the Raves are held to the strict terms of the option. *See Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 271-72 (1939) (explaining that, absent fault by the optionor, the optionee is held to the strict terms of the option agreement); *Davis v. Norris*, 352 S.W.3d 715, 721 (Tex. App.—Texarkana 2011, pet. denied) ("'It is a well-settled principle that strict compliance with the provisions of an option contract is required.'").While in some circumstances modifications can be made to an option, there was no evidence the parties ever modified the terms of the written option contained in the parties' written agreements. *See Faucette*, 322 S.W.3d at 908. (noting that options are capable of being modified). Additionally, the Raves have not argued on appeal or in the trial court that the written agreements they made with the Dortas were modified after they were signed.

At trial, the Raves attempted to show that they exercised the purchase option by paying ten percent of the agreed purchase price for the premises at issue. However, the amount that constitutes the agreed price is not able to be determined by examining the documents that constitute the parties' written agreement. While the General Agreement provides a formula that is to be used in deriving the agreed price, the formula provided by the General Agreement does not contain the

8

essential information required to derive the agreed price. Given the option's terms, additional evidence, such as the Dortas' purchase price of the property, is needed to derive the agreed price. The Dortas argue that the evidence from the trial is legally insufficient to prove that the Raves exercised the purchase option; the Dortas attack a cluster of the trial court's findings[1] and conclusions,[2] which together address whether the Raves proved to the trial court that they had complied with the terms of the option.

We consider a claim that a party exercised their purchase option as a defense to the Dortas' forcible detainer action. Although for the purposes of this trial, the Raves established that they paid $5,000 to exercise the option, they were required to show that they complied with each of the obligations imposed on them by the option. *See id*. Under the purchase option, the Raves were obliged to pay ten percent of the purchase price to exercise the option. But, the Raves produced no evidence regarding the agreed price of the premises at issue.

While a provision in the General Agreement states that the writing represents the entire agreement, the option agreement is not a fully integrated term because additional information, outside the corners of the agreement, is needed to

---

[1]Findings of Fact 2, 3, 7, 8, 9, and 15.

[2]Conclusions of Law 3-7.

9

determine whether the Raves strictly complied with the purchase-by-down-payment provision of the option. Under Texas law, the existence of an integration provision does not always prohibit the introduction of testimony to show the terms of the agreement where the contract, on its face, shows that it is not fully integrated. *See Bob Robertson, Inc. v. Webster*, 679 S.W.2d 683, 688-89 (Tex. App.—Houston [1st Dist.] 1984, no writ). In evaluating a contract, a court may conclude that the contract is integrated in some of its terms, but is not fully integrated as to others. *See Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 108 Tex. 422, 195 S.W. 184, 185 (1917).

In this case, the Dortas' legal sufficiency challenge requires us to review the evidence admitted during the trial to determine if legally sufficient evidence was introduced to create a fact issue on the amount the Raves agreed to pay to purchase the property. In an appeal from a bench trial, we review legal and factual sufficiency issues under the same standards that are applied to the review of a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When reviewing a finding for legal sufficiency, we credit the favorable evidence if a reasonable factfinder could and disregard the contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). A reviewing court will sustain a no-evidence point when "(1) the

record discloses a complete absence of evidence of a vital fact[,] (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact[,] (3) the evidence offered to prove a vital fact is no more than a mere scintilla[,] or (4) the evidence establishes conclusively the opposite of the vital fact." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *see also City of Keller*, 168 S.W.3d at 807.

During the trial, neither Carlos nor Gustavo testified regarding the agreed purchase price of the property. Additionally, no evidence or testimony was introduced during the trial to address any of the expenses incurred by the Dortas on the premises, such as the amount the Dortas paid to purchase the property from Opal Handy or the amount the Dortas paid on taxes and insurance during the option period. Also, there was no evidence admitted during the trial that showed the Raves were prevented from proving what the formula in the written contracts required them to pay to exercise their option to purchase the property. The Raves' claim that they complied with and exercised the option remains an issue that can be decided in a separate suit in district court. *See* Tex. R. Civ. P. 746 (providing that in forcible detainer actions, "the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated"); *Rice*, 51 S.W.3d at 709 ("Because a forcible detainer action is not exclusive, but cumulative, of any

11

other remedy that a party may have in the courts of this state, the displaced party is entitled to bring a separate suit in the district court to determine the question of title.").

Because the evidence the trial court admitted during the trial was legally insufficient to show that title was at issue, the trial court was required to view the case as a forcible detainer proceeding. *See Rice*, 51 S.W.3d at 709. With respect to the Dortas' forcible detainer action, the Dortas established they were entitled to possession of the premises as a matter of law, primarily through the following documents that were admitted into evidence without objection: (1) a certified copy of their deed from Opal Handy, (2) a copy of their residential lease with the Raves, (3) a copy of a letter sent by certified mail from the Dortas' attorney to the Raves terminating the lease, and (4) a copy of a letter sent by certified mail from the Dortas' attorney to the Raves demanding that they vacate the premises. The notice to vacate proved that the Dortas gave the Raves proper notice to vacate the premises. *See* Tex. Prop. Code Ann. § 24.005 (West Supp. 2013). The testimony of Gustavo established that the Raves possessed the property at the time of trial and that the Raves had refused to vacate. The fact that the Raves continued to occupy the premises in June 2012, the date of the trial in the County Court at Law, was never disputed.

We conclude that the evidence admitted during the trial was sufficient to establish the Dortas had a superior right to immediate possession of the premises. *See Morris v. Am. Home Mortg. Servicing, Inc.*, 360 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We further conclude that the Raves produced legally insufficient evidence on their claim that they exercised an option to purchase the property. Because the trial court could have resolved the right to possession without resolving the ultimate title dispute, it was required to do so and to award possession of the property to the Dortas. Under Rule 43.3, we are required to render the judgment the trial court should have rendered. Tex. R. App. P. 43.3. Accordingly, we reverse the trial court's judgment, and render judgment that the Dortas are entitled to possession of 22873 Cumbre Drive in Porter, Texas.

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on November 7, 2013
Opinion Delivered January 9, 2014

Before McKeithen, C.J, Kreger and Horton, JJ.

13