

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00088-CV

_____

THOMAS SEABOURNE, Appellant

V.

DANESE SEABOURNE, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. 2015-140

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

Danese Seabourne brought a breach-of-contract claim against Thomas Seabourne after the couple divorced pursuant to an agreed decree and Thomas refused to reimburse Danese for one-half of the college tuition she paid on behalf of the couple's two daughters. The trial court entered judgment against Thomas for the sum of $10,475.13, plus attorney fees and expenses in the amount of $4,828.34. We affirm the trial court's judgment because (1) the trial court was authorized to enter the judgment, (2) the contractual provision is enforceable, (3) sufficient evidence supports the damage award, and (4) the award of attorney fees and costs was proper.

## I.      Background

Danese and Thomas entered into an agreed final decree of divorce on October 29, 2012, in Rusk County, Texas. Pursuant to the decree, Thomas was ordered to pay monthly child support on behalf of two children of the marriage, Susanna and Julia Seabourne.[1] In a different section of the decree, captioned "College Tuition," the parties were required to "each pay 50% of the college tuition for the children subject of this suit. DANESE SEABOURNE shall provide THOMAS SEABOURNE with a statement from the college upon receipt [by] her. Each party shall pay their portion of the tuition within 30 days of receipt."

At the time of the June 2015 hearing on Danese's breach-of-contract action, both Susanna and Julia were attending Virginia Commonwealth University (VCU).[2] Danese testified that

---

[1]Although Danese and Thomas had five children, only Susanna and Julia were of school age at the time of the divorce.

[2]Danese paid for one semester at VCU for Susanna at an increased rate for out-of-state tuition, until residency was established.

although she provided Thomas with statements of tuition costs, Thomas did not pay any portion of the college tuition for either Susanna or Julia. Consequently, Danese paid one hundred percent of the girls' tuition. Danese expended a total of $23,174.43 either in direct payments, or by incurring loans, for the tuition of both Susanna and Julia, and claimed that Thomas owed fifty percent of that amount, or $11,587.22. Thomas testified that he did not intend to pay any portion of the girls' college tuition, also claiming that he did not agree to pay out-of-state tuition.

Danese introduced evidence that she notified Thomas of the amount of tuition he owed for both girls in accord with the decree. On appeal, Thomas does not dispute the adequacy of this notice. Thomas does claim, however, that (1) the trial court abused its discretion in awarding Danese post-majority support in the absence of a written agreement or express order of the court providing for enforcement as a contractual obligation, (2) the trial court abused its discretion in awarding Danese a lump sum judgment for one-half of the children's unpaid college tuition because the alleged agreement is too uncertain and ambiguous to enforce, (3) there is no evidence, or in the alternative, there is insufficient evidence, to sustain the trial court's finding that appellee was entitled to an award of $10,475.13 in damages for the breach of contract, because this award was not offset for scholarships and grants, and (4) the trial court abused its discretion in ordering Thomas to pay court costs and attorney fees.

## II.    Analysis

We review the trial court's judgment for an abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). When a trial court acts without reference to any guiding rules or principles or when it fails to analyze or apply the law correctly, it abuses its

3

discretion. *Id.*; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "A trial court has no discretion in determining what the law is or in properly applying the law." *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 643 (Tex. 2009) (citing *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 612 (Tex. 2006)).

### A.      The Trial Court Was Authorized to Enter the Judgment

In his first point of error, Thomas claims that the trial court lacked the authority to enter judgment because the provision of the final decree requiring that each party pay one-half of the children's college tuition constituted a post-majority support provision which was not established by a separate written agreement.[3]  In support of this contention, Thomas relies on *Elfeldt v. Elfeldt*, 730 S.W.2d 657, 658 (Tex. 1987) (per curiam), and *Bruni v. Bruni*, 924 S.W.2d 366, 367 (Tex. 1996).  We examine each case in turn.

In *Elfeldt*, the trial court entered an agreed modification order requiring the father to pay child support until the younger of the parties' two children reached the age of eighteen or until either or both children completed four years of college.  The father stopped paying child support when the youngest child reached the age of eighteen.  Because both children were in college, the children's mother brought a breach of contract suit to enforce the terms of the agreed order.[4]

---

[3]Thomas does not contend that the provision in the agreed decree is unenforceable because it is child support.

[4]"The suit was brought as a contract claim because a court of continuing jurisdiction . . . has no authority to order or to enforce support for a non-disabled child over [the age of] eighteen." *Elfeldt*, 730 S.W.2d at 658.

The court interpreted former Section 14.06(d) of the Texas Family Code[5] to require the order incorporating the agreement to provide "that its terms are enforceable as contract terms for that remedy to be available." *Elfeldt*, 730 S.W.2d at 658. Because the parties "did not stipulate that the agreed order was contractually enforceable," the father was not bound to support the children past the age of eighteen. *Id.*

*Bruni*, like *Elfeldt*, involved the enforcement of an agreement to provide child support beyond age eighteen. *Bruni*, 924 S.W.2d at 367. There, the trial court entered a modification order awarding additional support until each child reached the age of twenty-one. *Id.* In discussing the enforceability of the order, the *Bruni* court, again applying former Section 14.06(d) of the Texas Family Code, held that "[w]hen there is no separate written agreement" for post-majority support "and the trial court's order is the only written manifestation of the parties' agreement on support, *Elfeldt* requires that the trial court's order provide for enforceability." *Id.* at 368.

In *Bruni*, though, the agreement specifically provided that it survived the divorce decree and was binding on the parties if the trial court approved the agreement and incorporated it into the decree. *Id.* Further, "the inclusion of the parties' agreement for child support in[to] the decree" constituted approval of those terms by the trial court. *Id.* Because the original agreement was enforceable as a contract, the modification of child support was likewise enforceable as a contract. The court, therefore, held that the amended agreement satisfied the requirements of the Family Code and was enforceable in contract. *Id.* at 369.

---

[5]Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.06(d), 1973 Tex. Gen. Laws 1411, 1425, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Gen. Laws 113, 282.

Thomas contends that because, as in *Elfeldt*, the parties here did not enter into a separate written agreement which was incorporated into the final decree and because the decree does not include language to provide for the enforceability of the obligation to pay post-majority support, the trial court did not have the authority to enforce the post-majority support provision by reducing it to judgment. We disagree.

Initially, we recognize that *Elfeldt* and *Bruni* each dealt with the continuation of preexisting child support obligations under Section 154.124(c)'s predecessor statute.[6] *See Bruni*, 924 S.W.2d at 367; *Elfeldt*, 730 S.W.2d at 658; *see also Bartlett v. Bartlett*, 465 S.W.3d 745, 750 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (recognizing that *Elfeldt* and *Bruni* each dealt with continuations of preexisting child support obligations). The tuition-payment requirement in this

---

[6]Section 154.124, captioned "Agreement Concerning Support," provides:

> (a)  To promote the amicable settlement of disputes between the parties to a suit, the parties may enter into a written agreement containing provisions for support of the child and for modification of the agreement, including variations from the child support guidelines provided by Subchapter C.

> (b)  If the court finds that the agreement is in the child's best interest, the court shall render an order in accordance with the agreement.

> (c)  Terms of the agreement pertaining to child support in the order may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as a contract.

> (d)  If the court finds the agreement is not in the child's best interest, the court may request the parties to submit a revised agreement or the court may render an order for the support of the child.

TEX. FAM. CODE ANN. § 154.124 (West 2014). *Bruni* and *Elfeldt* were decided based on superseded sections of the Texas Family Code. *See, e.g.*, *Bruni*, 924 S.W.2d at 367–68; *Elfeldt*, 730 S.W.2d at 658. Former Section 14.06(d) provided for the enforceability of agreements pertaining to child support as a contract if the parties' written agreement reflected in the order provided for enforceability as a contract. Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.06(d), 1973 Tex. Gen. Laws 1411, 1425 (repealed 1995). Section 154.124(c) of the Texas Family Code specifically provides that agreements pertaining to child support are not contractually enforceable. TEX. FAM. CODE ANN. § 154.124(c).

case is not, as in *Elfeldt* and *Bruni*, a continuation of a preexisting child support obligation. Instead, it is an independent contractual promise falling under the caption of "College Tuition," rather than under the section of the decree having to do with child support. In reaching this conclusion, we find *Bartlett* instructive.

In that case, Lori Bartlett brought a breach of contract action against William Bartlett for his alleged failure to pay college expenses for their son pursuant to an agreed decree of divorce. *Bartlett*, 465 S.W.3d at 747. William claimed that the Texas Supreme Court's decisions in *Elfeldt* and *Bruni* prevented the college-expense provision of the decree from being enforced as a contract. *Id.* at 750–51. The court determined that the orders for continued child support in those cases differed from the provision in *Bartlett*. In reaching this conclusion, the court relied on the fact that the *Bartlett* college-expense provision was not included in the portion of the decree addressing child support. *Id.* at 750. Instead, the college-expense provision was included as part of the "Division of the Marital Estate" section of the decree. *Id.* Moreover, William's child support payments terminated under terms separate and distinct from those applicable to the college-expense provision. *Id.*

The court distinguished *Huffines v. McMahill*, No. 07-10-00029-CV, 2010 WL 2836980 (Tex. App.—Amarillo July 20, 2010, no pet.) (mem. op.), in which the court found that a college-expense provision was child support. In *Huffines*, the college-expense provision was located under the heading of "Support." *Id.* at *1. The provision stated that "neither party is to pay child support, except that [father] is to continue to provide health insurance for [the child]." *Id.* This provision also provided that father would be responsible for his son's "clothing needs, sports activities fees,

and future vehicle needs." *Id*. at *2. The next sentence obligated father to pay for one-half of the son's college tuition and for unreimbursed medical expenses. *Id*. "Of key importance to the Amarillo Court's conclusion that the college-expense provision was child support, the provision was found in the 'support' section of the decree and various expenses were listed in lieu of periodic payments of support." *Bartlett*, 465 S.W.3d at 750.

The decree in this case, like the decree in *Bartlett*, includes a separate section for child support which requires periodic payments and which terminated under terms separate and distinct from the college-tuition provision. Unlike *Huffines*, the college-tuition provision in this case was, like *Bartlett*, included in a separate section of the decree. Here, that section was specifically listed as "College Tuition." We therefore conclude that the college-tuition provision of the decree here was not child support.

Because *Elfeldt* and *Bruni* were based on a superseded section of the Family Code and because those cases were specifically concerned with post-majority payments that were continuations of preexisting child support obligations, they do not control the disposition of this case. *See Bartlett*, 465 S.W.3d at 750–51. Because the college-tuition provision here is not an agreement for child support, it is subject to enforcement as a contract. Here, the parties entered into an agreed divorce decree, which is a contract. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *Maddox v. Maddox*, No. 06-10-00055-CV, 2011 WL 808930, at *2 (Tex.

8

App.—Texarkana Mar. 9, 2011, no pet.) (mem. op.); *Broesche v. Jacobson*, 218 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). We overrule this point of error.[7]

### B. The Contractual Provision is Enforceable

Thomas next contends that even if the college tuition provision is a contractual obligation, it is too ambiguous and uncertain to enforce. An agreed judgment is construed in accord with the rules of contract interpretation. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000); *In re P.D.D.*, 256 S.W.3d 834, 844 (Tex. App.—Texarkana 2008, no pet.) ("An agreed judgment must be interpreted as if it were a contract between the parties and the interpretation is, accordingly, governed by the laws relating to contracts."). "The question of whether a contract is ambiguous is one of law for the court." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Burlington Res. Oil & Gas Co., LP v. Petromax Operating Co.*, No. 06-15-00044-CV, 2016 WL 908228, at *7 (Tex. App.—Texarkana Mar. 10, 2016, no pet.). Our primary concern in interpreting a contract is to ascertain the true intent of the parties. *Heritage Res.*, 939 S.W.2d at 121. To achieve this end, we examine the entire writing in an effort to give effect to all of its provisions. *Davis v. Norris*, 352 S.W.3d 715, 721 (Tex. App.—Texarkana 2011, pet. denied). If the contract can be given a definite legal meaning, it is not ambiguous, and it will be enforced as written. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Conversely, if the contract is capable of more than one reasonable interpretation, then it is ambiguous. *Id.* (citing *Am. Mfrs.*

---

[7]We disagree with Danese's assertion that Thomas failed to preserve any claim regarding the enforceability of the college-tuition provision. "A general denial of matters pleaded by the adverse party which are not required to be denied under oath, shall be sufficient to put the same in issue." TEX. R. CIV. P. 92.

*Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). We review de novo the issue of contract ambiguity. *Id*. (citing *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003)).[8]

As best we are able to discern, Thomas contends the college-tuition provision does not specify the precise amount of money he will owe for his share of the college tuition. In support of his ambiguity claim, Thomas relies on *In re Marriage of Grossnickle*, 115 S.W.3d 238, 245 (Tex. App.—Texarkana 2003, no pet.). That case involved an appeal from an order modifying a child support order, requiring the father to pay one-half of the costs for the child to attend a private girls' school. *Id*. at 245. Although we determined that the order requiring the father to pay one-half of the tuition was not an abuse of discretion, we held that the order was not enforceable through contempt proceedings, because it was insufficiently certain:

> It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.

*Id*. at 249 (quoting *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967)). *Grossnickle* was concerned with a child support order which was enforceable by contempt. Because contempt was the enforcement mechanism at issue in *Grossnickle*, the child support order's failure to specify the

---

[8]Danese contends that because Thomas failed to assert ambiguity as an affirmative defense, this issue has been waived on appeal. We decline to hold that waiver resolves this issue. Thomas testified that he believed the college tuition provision was ambiguous, raised questions about what it meant, and concluded that it meant "nothing to me." Moreover, a court may determine a contract is ambiguous even in the absence of such a pleading by either party. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) (even if neither party pleads ambiguity, a trial judge may conclude a contract is ambiguous); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (although both parties asserted property settlement agreement was unambiguous and moved for summary judgment, Supreme Court concluded agreement was ambiguous); *see also White v. Moore*, 760 S.W.2d 242, 243 (Tex. 1988) (although both parties agreed the will was unambiguous, Supreme Court decided, as a matter of law, that it was ambiguous); *Old Republic Sur. Co. v. Palmer*, 5 S.W.3d 357, 360–61 (Tex. App.—Texarkana 1999, no pet.) (recognizing *Sage* and *White* and addressing issue of ambiguity, although not specifically pled).

exact amount the obligor was required to pay rendered it unenforceable by that mechanism. Here, however, Danese seeks to recover under a contract claim. *Grossnickle*, therefore, is not dispositive of this issue.

Here, the agreed judgment provides that "each pay 50% of the college tuition for the children subject of this suit. DANESE SEABOURNE shall provide THOMAS SEABOURNE with a statement from the college upon receipt [by] her. Each party shall pay their portion of the tuition within 30 days of receipt." While this language may be too uncertain to enforce by contempt, *see id.*, it is not ambiguous. This language clearly expresses the intent that both Danese and Thomas will pay one-half of each of the girls' college tuition, whatever the amount, and does not place any restrictions on the parties' respective responsibilities to fulfill this obligation. "The failure to include more express language of the parties' intent does not create an ambiguity." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996). Because this provision is unambiguous, we will enforce it as written.[9] *Heritage Res., Inc.*, 939 S.W.2d at 121. A court may not rewrite the parties' contract or add to its language under the guise

---

[9]Moreover, when a contract fails to state an exact price, the law presumes that the parties to the contract intended a reasonable price. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 233, 241 (Tex. 2016). This presumption is particularly strong when "the agreement specifies a formula or other basis on which a reasonable price may be determined." *Id.* Thus, "[w]hen the parties to an agreement specify that a third person is to fix the price, the contract is not unenforceable for lack of definiteness." *Penwell v. Barrett*, 724 S.W.2d 902, 905 (Tex. App.—San Antonio 1987, no writ) (holding that parties' agreement that "the purchase price [of 2.981-acre tract] would be that value given the property by an appraiser" was sufficiently definite to be enforced in breach of contract action).

Here, the parties agreed to pay that tuition which was established by the university the children attended. The university was not a party to the agreement, and its determination of tuition was established independent of the parties' interest herein. Consequently, by agreeing that "each [party will] pay 50% of the college tuition for the children subject of this suit" and that "DANESE SEABOURNE shall provide THOMAS SEABOURNE with a statement from the college upon receipt," the parties' contract established the required basis discussed in *Fisher* and was therefore enforceable by breach of contract action even if it would not have been enforced by contempt.

11

of interpretation. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). We overrule this point of error.

### C.     Sufficient Evidence Supports the Damages Award

Thomas next contends that there is no evidence, or in the alternative, there is insufficient evidence, to sustain the trial court's finding that Danese was entitled to an award of $10,475.13 in damages for the breach of contract, because this award was not offset by scholarships and grants.[10]

In resolving the sufficiency of the evidence to support damages, the trial court's damage award will be upheld if it is within the range of the testimony regarding the amount of damages incurred. *Garza de Escabedo v. Haygood*, 283 S.W.3d 3, 6 (Tex. App.—Tyler 2009, pet. granted), *aff'd sub nom. Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011); *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 392 (Tex. App.—Texarkana 2003, pet. denied).

Thomas contends the correct figure representing one-half of college tuition for both girls is reflected to be $8,225.48, after offsets for fees, grants, and scholarships. In support of this figure, Thomas relies on Plaintiff's Exhibit 2. This document reflects total college tuition from Spring

---

[10]Thomas requested that the trial court issue findings of fact and conclusions of law. When none were forthcoming, Thomas filed a notice of past due findings of fact and conclusions of law. Although the clerk's record contains a file-marked document captioned "Findings of Fact and Conclusions of Law," that document was not signed by the trial court. The trial court has a mandatory duty to file findings of fact when they are properly requested. TEX. R. CIV. P. 296, 297; *Nevada Gold & Silver, Inc. v. Andrews Indep. Sch. Dist.*, 225 S.W.3d 68, 77 (Tex. App.—El Paso 2005, no pet.). A trial court's failure to file findings is presumed harmful unless the record affirmatively shows the appellant suffered no harm. *See, e.g.*, *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam); *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). When the trial court's reasons for its judgment are apparent from the record, the presumption of harm is rebutted. *See Landbase, Inc. v. Tex. Emp't Comm'n*, 885 S.W.2d 499, 502 (Tex. App.—San Antonio 1994, writ denied). The test for harm looks to whether the reasons for the trial court's ruling are obvious from the record. *Sheldon Pollack Corp. v. Pioneer Concrete of Tex., Inc.*, 765 S.W.2d 843, 845 (Tex. App.—Dallas 1989, writ denied). If harm exists from the court's failure to issue findings of fact and conclusions of law, the appropriate remedy is to abate the appeal and direct the trial court to correct its error pursuant to Rule 44.4 of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.4. Here, it is apparent from the record that the trial court entered its judgment based on an alleged breach of contract and found damages based on Plaintiff's Exhibit 10. Consequently, there is no need to abate this matter for the entry of factual findings.

2013 through Fall 2014 for Susanna of $25,393.44. This document further reflects grants for Susanna in the total amount of $10,510.00. Susanna's total tuition cost (less grants) to be paid by both parents is, according to Exhibit 2, $14,883.44. Thomas' share would therefore equal $7,441.72. Exhibit 2 indicates that Julia's total tuition is $1,771.20. Thomas' share of this figure totals $885.60, thereby making the total tuition amount for which he is liable $8,327.32.

The trial court entered judgment in the amount of $10,475.13 for Thomas' share of the girls' college tuition. Danese contends that this figure was derived from Plaintiff's Exhibit 10, a letter from her counsel to Thomas purporting to show the amount of tuition Thomas owed for both girls. Both exhibits were offered by Danese, and Thomas failed to object to either. Because Exhibit 2 lists separate amounts for tuition, fees, grants, and loans, it is easy to determine Thomas' fifty percent of the total tuition for both girls. Exhibit 10, however, offers no detailed breakdown of the amounts listed for "tuition expenses." While the Spring 2013 and the Fall 2014 tuition amounts listed in that exhibit for Susanna correspond to the amounts listed in Exhibit 2, the figures listed for the Fall 2013 and the Spring 2014 tuition for Susanna do not correspond with the tuition amounts listed in Exhibit 2 for those semesters.

Danese claims, however, that we cannot conclude the trial court abused its discretion by including the higher figure of $10,475.13 in the judgment since Exhibit 10, at least in part, supports that figure and was within the range presented at trial. *See Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 352 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (upholding a damage award within the range presented at trial, even though part, but not all, of the award was based on plaintiff's speculation). While it is true that Exhibit 2 is a more detailed statement of

13

damages, Exhibit 10 is some evidence of damages. Because there was more than a scintilla of evidence to support the amount awarded by the trial court, and because we cannot say the great weight and preponderance of the evidence indicates this award was improper, we overrule this point of error.

### D. No Error in the Award of Attorney Fees and Costs

Thomas contends that in the absence of contractual or statutory authority for the award of attorney fees, the fee award should be reversed. Thomas does not claim that the amount of the fee award is improper. Rather, he questions the legal basis for the imposition of the award.

Because both parties entered into an agreed divorce decree, the decree is treated as a contract between the parties with the law of contracts governing this dispute. *See Hicks v. Hicks*, 348 S.W.3d 281, 283 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A party may recover reasonable attorney fees in a suit founded on a claim for breach of an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). A key requirement of this section is that "the party seeking attorney's fees must first prevail on a valid contract claim." *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004) (per curiam)). Since Danese has prevailed on her contract claim, she is entitled to attorney fees under Section 38.001 of the Texas Civil Practice and Remedies Code. Danese was represented by counsel, her claim for tuition amounts was presented to Thomas, and payment for the just amount owed was never tendered. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (West 2015). We affirm the award of attorney fees and costs.

### III.     Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     March 1, 2016
Date Decided:       May 20, 2016

Publish