Scott W. and Loretta L.
NEILY, Appellants,

v.

Calvin AARON, d/b/a Quality Manufac-
tured Housing, and Quality Mobile
Homes; and National Mortgage Com-
pany of America, Appellees.

No. 2–85–222–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 28, 1987.

Rehearing Denied March 11, 1987.

Crampton, Crampton & Estrada and Holly Crampton, Wichita Falls, for appellants.

Banner, McIntosh & Dobbs, and Jack Banner, Wichita Falls, for appellee Aaron.

Calhoun, Gump, Spillman & Stacy, and Jack C. Spillman, and William C. Smith Dallas, for Appellee Nat. Mortg. Co.

Before HOPKINS, FARRIS and KELTNER, JJ.

## OPINION

KELTNER, Justice.

This is a revocation of acceptance case. The appellants, Scott and Loretta Neily, sought to revoke their acceptance of a mobile home bought from Quality Mobile Homes because it did not conform to the contract of sale. Trial was to the court and resulted in a take-nothing judgment and a judgment against the Neilys for the unpaid balance on the mobile home, attorneys' fees and foreclosures of various security interests.

We affirm.

The Neilys purchased the mobile home from Quality Mobile Homes in September of 1981. Quality is owned by Calvin Aaron who also does business as Quality Manu-

factured Housing. Quality ordered the home from the manufacturer, Melody Manufacturing, another defendant in the case. Once the mobile home was delivered, it was inspected and accepted by the Neilys. They signed an installment sales contract, including a limited warranty, and a security agreement for the mobile home itself and various appliances therein. Quality transferred title of the home to the Neilys and assigned the installment sales contract and securities agreement to National Mortgage Company, another appellee in this appeal.

Concurrently with the sale, the Neilys contracted with Aaron to "set up, block and tie down" the mobile home on a lot selected by them in a mobile home park. The Neilys became dissatisfied with the home after they noticed it was not level. They claimed that the home shook with any movement, the windows failed to close, various cabinets were not flush to the walls, and that due to the unlevel condition of the home, the doors would not open and close. These problems were reported to Quality, who directed individuals to try to remedy the situation. Also, the manufacturer was called in to see whether the frame of the trailer was in a damaged condition. However, the problems were not remedied to the Neilys' satisfaction. As a result, eight months later, the Neilys notified Quality that they revoked their acceptance of the home. Subsequently, they brought suit against Quality, Melody and National Mortgage, claiming breach of warranty and that they had revoked their acceptance of the mobile home due to its failure to conform to the contract of sale. They prayed for cancellation of the note and actual damages, including payments they had made on the note and attorneys' fees. The Neilys also sought a restraining order against National Mortgage from foreclosing its security interests on the mobile home or the contents therein. The trial court, upon agreement of National Mortgage, granted a temporary injunction that remained in effect during the pendency of the trial, a

period of over forty months. National Mortgage counter-claimed for breach of installment sales contract and asked that the security interests be foreclosed.

At trial, the Neilys abandoned their breach of warranty claims and proceeded only on their theory of revocation of acceptance under sec. 2.608 of the Uniform Commercial Code. TEX.BUS. & COM. CODE ANN. sec. 2.608 (TEX.UCC) (Vernon 1968). Specifically, the Neilys claimed that the frame to the trailer collapsed when it was jacked up during the "set up, blocking, and tie down" procedure. They claimed this collapse caused the damages which prevented the mobile home from conforming to the contract. At the end of the plaintiffs' evidence, Melody Mobile Homes was dismissed from the lawsuit.

The trial court rendered judgment against the Neilys and granted judgment to National Mortgage for breach of the installment sales contract and granted judicial foreclosure. The court filed fifty-two conclusions of law and findings of fact, none of which have been directly challenged by the Neilys.

The Neilys bring three points of error.

At the outset, we must address whether the Neilys properly perfected their appeal. Quality contends that the Neilys' motion for new trial was a nullity because of its general allegations and as a result, it did not extend the time to file the appeal bond under TEX.R.CIV.P. 356(a).[1] Specifically, Quality complains of the "Motion for New Trial and Corrected Decree" which was filed by the Neilys. That document actually contains two motions. The first was to correct the final decree to conform with the oral announcement of judgment made in open court by the judge. The second part of the document is a motion for new trial. That motion simply asks for new trial without assigning any alleged error, stating:

> NOW COMES Scott W. Neily and Loretta Neily, Plaintiffs herein and move this court to grant a new trial in this

---

**1.** At the time this case was appealed, TEX.R. CIV.P. 356(a) was still the applicable rule. However, during the pendency of this appeal, the Supreme Court and Court of Criminal Appeals adopted the rules of appellate procedure. Currently, TEX.R.APP.P. 41(a) controls this matter.

case.... Plaintiffs pray the Court grant a new trial in this cause....

■ This broad request and prayer for new trial does not conform with TEX.R. CIV.P. 321 and 322. Rule 321 requires that the motion for new trial refer to the particular matter complained of, "in such a way that the objection can be clearly identified and understood by the court." Rule 322 states emphatically that, "Grounds of objections couched in general terms ... shall not be considered by the court." The Neilys' motion for new trial did not direct the court's attention to any alleged error and as a result, the motion preserves no error for appeal. *See Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 633 (Tex.1969); *Wagner v. Foster*, 161 Tex. 333, 336, 341 S.W.2d 887, 891 (1960) (per curiam).

The question presented to this court is whether a timely filed motion for new trial that does not conform to the requisites of TEX.R.CIV.P. 321 and 322, thus preserving no error for appeal, nonetheless extends the time for perfecting appeal. TEX.R. CIV.P. 356(a)[2] mandates that an appeal bond must be filed within thirty days after the signing of the judgment, or, within ninety days after the judgment if a timely filed motion for new trial is filed. Appellants' appeal bond was filed 90 days after the judgment was signed.

This is a matter of first impression in Texas. We do not condone motions for new trial that do not aid the trial court by pointing out alleged error. There is a strong policy behind the requirements of rules 321 and 322. That policy is that the trial judge be fully aware of the errors complained of by an aggrieved party. Otherwise, the trial court cannot intelligently rule on a motion for new trial.

■ However, TEX.R.CIV.P. 356[3] states the time for filing an appeal bond is extended if a "timely motion for new trial" is filed. The rule does not state that the motion for new trial must comply with TEX.R.CIV.P. 321 and 322. The Neilys' motion for new trial was filed on the thirti-eth day after judgment and as a result, is timely filed. We also note that the trial court did modify the judgment by order after the motion was filed to correct the discrepancy between the announcement of judgment in open court and the written judgment. Therefore, we hold that the motion for new trial did extend the time for filing the appeal bond until ninety days after the judgment was signed. The appeal bond was properly filed within that time period.

The first point of error complains of the trial court's exclusion of evidence of Mr. Neily's comparison of his mobile home's performance in thunder and windstorms with performance of other mobile homes in alleged similar circumstances. The trial court sustained objections that the evidence was not supported by the pleadings; the testimony was not probative because of dissimilar conditions; the testimony was a self-serving opinion; and the testimony was irrelevant and immaterial. The record presents us with a lengthy bill of exceptions in which Scott Neily testified that he had lived in two other mobile homes prior to occupying the mobile home that was the subject matter of this suit. He testified on the bill of exceptions that he had no problems during windstorms that were substantially similar to the ones that occurred while he presided in the Quality mobile home. However, he admitted that one of the other mobile homes was skirted and he could not testify that it was "anchored and tied down" in a similar manner to the Quality mobile home. He also admitted that the soil conditions in Arizona were different (dry) than Wichita Falls (wet). We do not have to reach the question of whether this testimony was properly excluded because Neily was allowed to testify to substantially the same information in previous testimony. Neily was allowed to testify that the mobile home in the instant case would shake considerably in storms; the shaking was not similar to the shaking he experienced in other mobile homes because, while the walls of those homes vibrated, the floors did not shake; he had never experi-

**2.** *Id.*

**3.** *Id.*

enced this type of difficulty with other mobile homes; and a lack of "tie downs" made the Quality mobile home unsafe.

The Neilys' counsel tendered the bill of exception on the following basis:

Your Honor, we tender the bill for purposes of showing that the basis on which Mr. and Mrs. Neily moved out of the mobile home, the basis on which they felt when it came to be springtime they could not continue to stay in this mobile home with its condition as has been shown by Plaintiff's, particularly Plaintiff's Exhibit No. 29, and the basis on which Mr. Neily arrived at his personal opinion, that he needed to move out. Now, as far as showing, you know, why he took the actions he did, we do not tender it on our breach of warranty allegations whatsoever. I don't think it has anything to do with the breach of warranty nature of this case.

■ A comparison of the basis for the tender with the testimony that was admitted, demonstrates that the testimony desired by the Neilys was previously admitted into evidence. As a result, no substantial rights of the Neilys were affected by the court's ruling and hence, no reversible error occurred. *See* TEX.R.EVID. 103(a).

The Neilys' third point of error states that, "there is no evidence and alternatively there is insufficient evidence to support the trial court's judgment and order." Quality contends that this point of error is vague and general and does not meet the requirements of TEX.R.CIV.P. 414(e) and 418(d)[4] in that it does not address the parties or this court to the claimed error in the record.

■ At the outset, the "insufficient evidence" portion of the third point of error is mischaracterized. The Neilys had the burden of proof on the allegations against Quality. The court's findings were against the Neilys on each of these findings. As a result, the proper point of error is that the court's individual findings are against the "great weight and preponderance of the evidence." The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error;* 38 TEXAS L.REV. 361 (1960). However, we do not hold that this mischaracterization is fatal to the appeal. The Supreme Court has wisely relaxed the former rigorous requirements of the wording of points of error. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 632–33 (Tex.1986). As a result, we will consider the "insufficient evidence" portion of the point of error as an allegation that the trial court's judgment is "against the great weight and preponderance of the evidence."

■ Nonetheless, we are presented with another problem in the third point of error. The trial court filed forty-six findings of fact. None of these individual findings of fact are attacked individually. Instead, the Neilys challenge the findings of fact and conclusions of law generally stating in the text of their brief, "[a]ppellant challenges the findings of fact filed in this case as well as the conclusions of law." The Neilys do not attempt to specifically attack the factual basis of any individual finding nor do they claim that the findings do not support the court's judgment. TEX.R.CIV.P. 418(d)[5] allows the combination of attacks on the legal or the factual sufficiency of the evidence into one point of error. However, the rule requires that the argument in the brief, "sufficiently direct the court's attention to the nature of the complaint made *regarding each such issue or finding or legal conclusion based thereon.*" (Emphasis added.) TEX.R.CIV.P. 418(d).[6]

---

4. TEX.R.CIV.P. 414(e) and 418(d) were the applicable rules at the time this case was briefed. However, during the pendency of this appeal, the Supreme Court and Court of Criminal Appeals have adopted TEX.R.APP.P. 74(d) and (e) to replace those rules.

5. TEX.R.CIV.P. 418(d) was in effect at the time this appeal was briefed. However, during the pendency of the appeal, that rule was replaced with TEX.R.APP.P. 74(d).

6. *Id.*

Instead of attacking each finding of fact, the Neilys ask us to review the entire record to determine whether the evidence supports the judgment. As a result, the third point of error is fatally flawed.

■ Additionally, rule 418(d)[7] requires references to the record when complaints of factual or legal sufficiency are combined. Reference to the record is extremely important in points of error alleging that a finding of the court is "against the great weight and preponderance of the evidence," as this court must review all relevant evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). The Neilys' third point of error does not aid us in this endeavor and for this reason, it is insufficient to preserve error under rule 418(d).[8]

Notwithstanding the shortcomings of the third point of error, we have reviewed the entire statement of facts and find there was ample evidence to support the court's judgment and the findings of fact are not against the great weight and preponderance of the evidence.

■ Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat. Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.)

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the trial court's finding and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the trial court's finding, the point must be overruled and the finding upheld. *Id.* 224 S.W.2d at 661–62.

■ A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain,* 709 S.W.2d at 176. So considering the evidence, if the court's finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point must be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate,* 244 S.W.2d at 661.

■ In reviewing the evidence, we must naturally look to the cause of action of revocation of acceptance. The elements of revocation of acceptance under sec. 2.608 of the Uniform Commercial Code are: (1) initial acceptance (with a reasonable assumption that the non-conforming item

**7.** *Id.*

**8.** *Id.*

would be cured and it is not cured, or without discovery of the non-conforming item if acceptance was induced by difficulty of discovery or by seller's assurance); (2) of non-conforming item; (3) such non-conformity substantially impairs the value to the buyer; (4) and revocation occurs within a reasonable time; (5) in any event, the revocation must occur before a substantial change in the condition of the goods occurs (which change is not caused by defect of the goods). The determination of each of these elements is a question of fact. *Vista Chevrolet v. Lewis*, 704 S.W.2d 363, 368 (Tex.App.—Corpus Christi 1985), *rev'd on other grounds*, 709 S.W.2d 176 (Tex.1986).

■■■ The evidence on each element, except the Neilys' original acceptance, was hotly contested. Quality presented a number of witnesses whose testimony contradicted almost every point raised by the Neilys. While the Neilys testified that the mobile home was uninhabitable and did not comply with the contract of sale, Quality's witnesses inspected the mobile home after it was vacated by the Neilys, and testified that they observed no damage that substantially impaired the value of the mobile home. To the contrary, two witnesses testified that after the mobile home was vacated in 1982, it had a monetary value equal, if not greater than, the purchase price. Four witnesses testified that the home had no material or substantial defects that affected its suitability as a dwelling. Three witnesses testified that the mobile home was "blocked, leveled, and set up correctly." Three witnesses testified the changes in climatic and soil condition can cause mobile homes to become unlevel. In fact, a subsequent occupier of the Neilys' lot testified that the lot was not suited for mobile homes because it "constantly shifts and changes." The same witness complained of many of the same problems the Neilys allege in this lawsuit, although his mobile home had never encountered problems before being moved to the Neilys' lot. One of Melody's employees testified that Scott Neily told him that he was not concerned about the defect in the frame of the mobile home and that he intended to "dump" the mobile home in a couple of years. Neily denied this conversation. Quality also submitted evidence that the individuals who "blocked, leveled and set up" the Neilys' home were independent contractors and not employees of Quality.

As a result, there is ample evidence to support the court's findings of fact negating the elements of non-conformity, substantial impairment, and difficulty in discovery of the alleged non-conformity. The findings of fact that Neilys' lot caused the unlevel condition of the home and that the individuals who "set up, tied down and blocked" the mobile home, are independent contractors, is also supported by the evidence. As a result, the Neilys' third point of error is overruled because there is substantial evidence to support the court's findings that is not so against the great weight and preponderance of the evidence as to be set aside.

In their second point of error, the Neilys argue that tender of the home back to the seller is not an element of a revocation of acceptance cause of action. We do not reach this point of error because we have held that the evidence supports the court's negative findings on other elements of the revocation of acceptance cause of action.

As a result, we affirm the judgment of the trial court in its entirety.