**Affirmed and Majority and Concurring Opinions filed April 30, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00058-CV

---

## WILLIAM WADE BARTLETT, Appellant

## V.

## LORI LEE BARTLETT, Appellee

---

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2012-55541**

---

## M A J O R I T Y   O P I N I O N

Appellee Lori Lee Bartlett sued appellant William Wade Bartlett for breach of contract after the couple divorced pursuant to an agreed decree and William refused to reimburse Lori for their son's college expenses. After a bench trial, the court awarded Lori damages for the amounts she spent on their son's college expenses during the son's first semester, as well as attorney's fees. William challenges the trial court's judgment in five issues, contending that the trial court abused its discretion by awarding Lori the college expenses because (1) the

college-expense provision of the decree is void; (2) the college-expense provision is not enforceable as a contract; (3) enforceability of the provision is precluded by statute; (4) William's performance is excused because his son committed the first material breach by failing to maintain a cumulative "C" grade point average; and (5) the trial court's award of health insurance and uninsured healthcare expenses is precluded by statute.

We overrule William's first, second, third, and fifth issues because the trial court correctly concluded that the college-expense provision is not child support under the Family Code. We overrule William's fourth issue because William waived this defense, and regardless, the record supports a deemed finding that any breach was not material.

## I. BACKGROUND

Lori and William signed an agreed final decree of divorce. They had two children of the marriage, an elder son and younger daughter. In Part 7 of the decree, "Conservatorship and Support," under a sub-part labeled "Child Support," William was ordered to pay Lori $1,800 per month until one of several conditions was met and then $1,500 per month until another condition was met.[1]

Part 8 of the decree, "Division of Marital Estate," addressed the properties and debts of Lori and William, the use and sale of the familial residence,

---

[1] Those conditions are as follows:

1. any child reaches the age of eighteen years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma or enrolled in courses for joint high school and junior college credit pursuant to Section 130.008, Education Code, the periodic child-support payments shall continue to be due and paid until the end of the month in which the child graduates;
2. any child marries;
3. any child dies
4. any child's disabilities are otherwise removed for general purposes; or
5. further order modifying this child support.

contractual alimony, life insurance, federal income taxes, and "Education Beyond High School." Under the "Education Beyond High School" provision, the parties agreed as follows:

> It is ordered and decreed that William Wade Bartlett shall pay 100% of all reasonable education expenses incurred to send each child either to college or to technical, vocational, or business school of his approval, provided the child is a full-time student and maintains at least a "C" or equivalent grade point average toward the completion of either a college bachelor's degree or a technical, vocational, or business school diploma. This obligation includes tuition, activities fees, laboratory fees, books, room and board, health insurance and related uninsured healthcare expenses, college dues and expenses, and other charges normally related to such education. This obligation may be enforced by the parties or the child.

The son began college in August 2012. Lori sued William in September 2012 for breach of contract because William refused to pay for the son's college expenses for the Fall 2012 semester. Initially, Lori paid for the college expenses. Then, William paid the tuition for the Spring and Summer 2013 semesters. The trial court admitted Plaintiff's Exhibit 7, titled "Amounts Paid by Parties for 2012-2013 School Semester," which itemized the expenses as follows:

| Amounts Paid by Lori Bartlett, 2012-2013 | | Amounts Paid by Wade Bartlett, 2012-2013 | |
|---|---|---|---|
| Application Fees for Trinity | $2,688.40 | Tuition Paid 12/7/2012 | $10,130.99 |
| Tuition Fall, Paid 8/3/2012 | $2,904.53 | | |
| Tuition Fall, Paid 9/3/2012 | $2,904.53 | | |
| Tuition Fall, Paid 10/4/2012 | $2,904.53 | | |
| Tuition Fall, Paid 11/5/2012 | $650.00 | | |
| Textbooks for Fall | $350.00 | | |
| Parking Pass for Fall | $73.00 | | |
| Move-In Expenses | $1,470.52 | | |
| Dorm Furnishings | $821.99 | | |
| Textbooks for Spring | $350.00 | | |
| Parking Pass for Spring | $73.00 | | |
| **Total** | **$15,190.50** | **Total** | **$10,130.99** |

3

The son testified that after the Spring 2013 semester, his cumulative grade point average (GPA) dropped below a "C" average to 1.929. But after finishing the Summer 2013 semester, his cumulative GPA was at least a "C" average.

The trial court signed a final judgment in Lori's favor, finding that William breached the college-expense provision of the agreed decree and that the son's "grade point average for his freshman year was at least a 'C' average." The court ordered William to reimburse Lori for the amounts she paid "per Exhibit P-7, attached hereto as Appendix 2, and incorporated herein by reference as though fully set forth herein." Upon William's request, the court signed findings of fact and conclusions of law, awarding Lori $15,190.50. The court concluded that the college-expense provision was "not a provision for child support under Chapter 154 of the Texas Family Code." The court also concluded that "the parties intended the provision to be enforceable as a contract, as evidenced by their signatures and agreement."[2] William appealed.

## II.    CHILD SUPPORT

William's first, second, third, and fifth issues on appeal are premised on the notion that the college-expense provision is one for "child support." However, following binding precedent from this court, we hold that the trial court did not abuse its discretion by concluding that the son's college expenses are not child support. First we explain that the college expenses are not child support. Then we address each of William's issues in turn.

---

[2] In Conclusions of Law Nos. 5, 6, and 7, the trial court rejected William's defenses of unclean hands, unenforceable order, and failure of condition precedent, respectively. The trial court did not address William's argument, raised for the first time in his motion for new trial, that "any alleged contract was breached" due to the son's failure to maintain a "C" average.

4

## A. College Expenses Are Not Child Support

In the context of determining venue, this court has held that a "payment which is not to be made until after the child reaches the age of 18 is not child support." *Busbey v. Busbey*, 619 S.W.2d 472, 475 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ) (holding that the adult son's claim for an $800 money judgment was not a claim for child support when it was based on the father's failure to release the amount of a savings account to the son when he turned 18, pursuant to the marriage settlement agreement). Last year, the Dallas Court of Appeals reaffirmed this understanding of the Family Code: "Child support, by definition, applies only to a child under the age of 18 years who has not yet graduated from high school or a high-school equivalent program." *In re W.R.B.*, No. 05-12-00776-CV, 2014 WL 1008222, at *4 (Tex. App.—Dallas Mar. 17, 2014, pet. denied). The court distinguished child support from "post-majority support," which "applies only to a non-disabled child who is 18 years of age or older and is no longer enrolled in high school or a high-school equivalent program." *Id.* (citing Tex. Fam. Code Ann. §§ 154.001(a), 154.002(a), 154.006(a)). The court held unequivocally that "post-majority support is not child support." *Id.* Consequently, the current version of Section 154.124(c), which prohibits enforcement of child support by a breach of contract action,[3] did not

---

[3] Section 154.124 provides that parties may enter into a written agreement for child support, and if the agreement is in the child's best interest, the court shall render an order in accordance with the agreement. *See* Tex. Fam. Code Ann. § 154.124(a)–(b). Paragraph (c) currently provides, "Terms of the agreement pertaining to child support in the order may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as a contract." *Id.* § 154.124(c). The version of the statute applicable to the Bartletts' agreed decree, however, read as follows: "Terms of the agreement in the order may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as contract terms *unless provided by the agreement*." Act of May 20, 2003, 78th Leg., R.S., ch. 480, § 1, 2003 Tex. Gen. Laws 1747, 1747 (emphasis added).

apply to the mother's claim for post-majority expenses (such as college expenses). *See id.* at *1, *4.

William relies heavily on the Texas Supreme Court's decisions in *Elfeldt* and *Bruni*. However, the court in those cases applied Section 154.124(c)'s predecessor statute to post-majority payments that were continuations of preexisting child support obligations. *See Bruni v. Bruni*, 924 S.W.2d 366, 367 (Tex. 1996) (applying predecessor statute when the parties entered into an agreement for child support to continue until each child reached the age of twenty-one; agreement itself was enforceable as a contract); *Elfeldt v. Elfeldt*, 730 S.W.2d 657, 658 (Tex. 1987) (applying predecessor statute to an "agreed child support modification order," which continued the father's periodic child support payments until the children completed four years of college; agreed order was not enforceable as a contract). Those types of orders for continued support are different from the college-expense provision here, which was not included in the "child support" part of the decree. William's periodic child support payments terminate under separate and distinct terms, whereas the college-expense provision was an independent contractual promise included as part of the "Division of Marital Estate."

William also relies on an Amarillo Court of Appeals decision that involved a materially different decree. *See Huffines v. McMahill*, No. 07-10-00029-CV, 2010 WL 2836980 (Tex. App.—Amarillo July 20, 2010, no pet.) (mem. op.). Under the agreed decree's "Support" provision, the trial court ordered that "neither party is to pay child support," but the decree directed the father to provide health insurance and sums for clothing, sports activity fees, school fees, future vehicle needs, and half of the child's unreimbursed medical expenses and college tuition. *See id.* at *1. The father later refused to pay for half of the child's college tuition, and the

6

mother sued for breach of contract. *Id.* Of key importance to the Amarillo Court's conclusion that the college-expense provision was child support, the provision was found in the "support" section of the decree and various expenses were listed in lieu of periodic payments of support. *See id.* at *2. Unlike *Huffines*, the Bartletts' decree included a separate section for child support that required William to make periodic payments, and the college-expense provision was part of the decree's section regarding division of the marital estate.

Finally, William argues for the first time in his reply brief on appeal that Lori's filing of a post-judgment petition for enforcement was a judicial admission that she sought collection of a child support obligation. William waived this argument by his failure to object to the introduction of contrary evidence at trial. *See, e.g., Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983) ("The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted."); *Lentz Eng'g, L.C. v. Brown*, No. 14-10-00610-CV, 2011 WL 4449655, at *2 (Tex. App.—Houston [14th Dist.] Sept. 27, 2011, no pet.) (mem. op.) (party waived judicial admission argument by failing to object to the admission of evidence contrary to the alleged judicial admission). He also waived the issue by failing raise it in his opening brief on appeal. *See Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (arguments raised for first time in reply brief are waived); *see also Cameron Cnty. v. Velasquez*, 668 S.W.2d 776, 784 (Tex. App.—Corpus Christi

1984, writ ref'd n.r.e.) (argument about judicial admission raised for first time in motion for rehearing was waived).[4]

In sum, the trial court correctly concluded that the college-expense provision in this case is not for child support, and therefore, the provision is enforceable by contract regardless of Section 154.124(c) of the Family Code.

## B.    Not a Void Order

In his first issue, William contends the trial court abused its discretion by enforcing a "void order" for support of a non-disabled child who was over eighteen years old and had graduated from high school.  William contends that the order or agreement in this case violates the current version of Section 154.124(c), which prohibits the enforcement of child support by contract.  *See* Tex. Fam. Code Ann. § 154.124(c).  As such, William argues the contract is void.  *See, e.g., In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129–30 (Tex. 2004) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy.").

We held above that the college-expense provision is not an agreement for child support.  Accordingly, Section 154.124(c) is inapplicable.[5]

William's first issue is overruled.

---

[4] Of course, Lori's post-judgment petition for enforcement was not a live pleading at the time of trial in this breach of contract action.  William has not cited any authority, and this court has found none, to support the notion that a party can judicially admit facts in a post-judgment pleading (seeking enforcement of a prior final judgment) that would operate to undermine the trial court's prior judgment.

[5] Further, even if the college-expense provision was one for child support, the 2003 amendment included a savings clause that made the amendment prospective only.  *See* Act of May 20, 2003, 78th Leg., R.S., ch. 480, § 2, 2003 Tex. Gen. Laws 1747, 1747.  The prior version of the statute, applicable to the Bartletts' agreed decree, allowed child support agreements to be enforceable by contract.  *See id.* § 1; *Bruni*, 924 S.W.2d at 367–68.

## C. *Elfeldt*/*Bruni* Test Not Applicable

In his second issue, William contends the trial court abused its discretion by enforcing the agreed decree as a contractual agreement because it "fails the *Elfeldt*/*Bruni* test." When there is an agreed order or judgment providing for child support and no separate written agreement between the parties, as here, then the version of Section 154.124(c) applicable to the Bartletts[6] required "that the trial court's order provide for enforceability." *Bruni*, 924 S.W.2d at 367. *Elfeldt* held that the statute required the order or decree to "expressly provide . . . that its terms are enforceable as contract terms." *Elfeldt*, 730 S.W.2d at 657.

However, as explained above, the Bartletts' college-expense provision is not an agreement for child support. Thus, we do not apply the *Elfeldt*/*Bruni* test or Section 154.124(c).

William's second issue is overruled.

## D. Section 154.124(c) Not Applicable

In his third issue, William contends the trial court abused its discretion by enforcing the decree as a contract because enforcement is precluded by the current version of Section 154.124(c), which states that child support is not enforceable by contract. However, as explained above, the Bartletts' college-expense provision is not an agreement for child support. Thus, we do not apply Section 154.124(c).[7]

William's third issue is overruled.

---

[6] *See supra* note 3.

[7] *See also supra* note 5.

**E.    Health Insurance and Uninsured Health Care Expenses Not Child Support**

In his fifth issue, William contends the trial court lacked statutory authority to order him to pay for health insurance coverage and uninsured health care expenses in connection with the "Education Beyond High School" provision because, in general, "medical support" is considered "child support" under the Family Code. *See* Tex. Fam. Code Ann. § 154.183(a)(2). However, as explained above, the Bartletts' college-expense provision is not an agreement for child support.

Further, even if health insurance and uninsured health care expenses were child support as a matter of law, we note that Lori did not recover any damages for William's failure to pay health insurance or uninsured health care expenses. Thus, the trial court's conclusion that these expenses were not child support did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a) (no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error probably caused the rendition of an improper judgment).

William's fifth issue is overruled.

## III.    FIRST MATERIAL BREACH

In his fourth issue, William contends the trial court abused its discretion by failing to find that a material breach of the contract occurred when the adult son failed to maintain a cumulative "C" GPA. Accordingly, William contends that he is "excused and discharged from further performance" under the contract: "when the adult son's GPA dropped below a 'C' average, the remaining terms of the contract were not subject to enforcement because it constituted a material breach."

Lori contends appellant waived this issue by not obtaining or requesting a finding on the issue. We agree. "[A] party asserting affirmative defenses in trial before the court must request findings in support of such a defense in order to avoid waiver on appeal." *See Pinnacle Homes Inc., v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). "Where the trial court files findings which do not establish any element of the grounds of defense, the party relying upon that defense must file a request for additional findings such as to avoid waiver of that defense on appeal." (citation omitted)). Here, the trial court specifically rejected three of William's affirmative defenses asserted in his written answer. The trial court did not address "material breach," as William did not plead this affirmative defense.[8] Although the trial court found in its order (signed before its findings of fact and conclusions of law) that the son's GPA "for his freshman year was at least a 'C' average," the trial court never found that the son did or did not breach the contract. William made no request for such a finding but rather alluded to the son's alleged breach in a motion for new trial.[9]

---

[8] *See Mustang Pipeline Co. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 197 (Tex. 2004) (material breach is an affirmative defense). Unless tried by consent, "the contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded or it is waived." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet. dism'd); *see also Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 280–81 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Where an affirmative defense is not pleaded or tried by consent, it is waived"; holding that a disclaimer defense was not tried by consent even though the trial court expressly found in its conclusions that the disclaimer was conspicuous and evidence of the disclaimer was introduced without objection).

[9] *See Monk v. Westgate Homeowners' Ass'n, Inc.*, No. 14-07-00886-CV, 2009 WL 2998985, at *3–4 (Tex. App.—Houston [14th Dist.] Aug. 11, 2009, no pet.) (mem. op.) (holding that an affirmative defense cannot be raised for the first time in a motion for new trial and is waived when no findings are obtained).

11

Lori also contends that even if the son failed to maintain a "C" GPA and "this constitutes a breach of the contract, it was not a material breach." Assuming for argument's sake that the trial court's finding about the son's GPA related to an affirmative defense of first material breach, that the son's failure to maintain a "C" GPA constituted a breach of contract, and that William did not waive this defense, we hold that the trial court could have reasonably found that any breach was not material as to the expenses that the court awarded to Lori. When a trial court makes a finding on at least one element of a defense, "any omitted findings will be deemed to support the judgment if evidence exists to support such findings." *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (citing Tex. R. Civ. P. 299). "Whether a party's breach of contract is so material as to render the contract unenforceable is a question of fact to be determined by the trier of fact." *Levine v. Steve Sharn Custom Homes, Inc.*, 448 S.W.3d 637, 654 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (citing *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). In determining whether the son's breach was material and whether William's obligations should be discharged, we look to the following circumstances:

(1)    the likelihood that the son will cure his failure to perform, taking into account all of the circumstances;

(2)    the extent to which the behavior of the son comports with standards of good faith and fair dealing;

(3)    the extent to which the son will suffer forfeiture;

(4)    the extent to which William will be deprived of the benefit which he reasonably expected;

(5)    the extent to which William can be adequately compensated for the part of that benefit of which he will be deprived;

(6)    the extent to which it reasonably appears to William that delay may prevent or hinder him in making reasonable substitute arrangements; and

12

(7)     the extent to which the agreement provides for performance without delay, but a material failure to perform or offer to perform on a stated day does not of itself discharge William's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.

*See Mustang Pipeline Co. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 197 (Tex. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 241, 242 (1981)).

In view of these factors, the record supports the trial court's deemed finding that any breach by the son was not material and did not excuse William's obligation to pay for expenses incurred before the breach. First, as the trial court expressly found, the son brought his GPA above a "C" average after the Summer 2013 semester. Thus, the son actually cured any failure to perform that occurred by his having a GPA below a "C" after the Spring 2013 semester. The trial court could have concluded that the son's behavior comported with standards of good faith and fair dealing, as he testified his grades dipped below a "C" average because his attendance suffered after surgery on his knee; he also was a football player for the university. Excusing William's performance as to all semesters (including the Fall 2012 semester for which the son's GPA was above a "C") would cause the son significant forfeiture. William was not deprived of the benefit he expected because his son remained a full time student toward a bachelor's degree at a university and maintained a GPA above a "C" by the time of trial. And there was evidence that William's refusal to fulfill his obligations under the agreement had nothing to do with the son's failure to maintain a "C" GPA for the Spring 2013 semester.[10] There is no evidence that the son's one-semester lapse

_____

[10] The son testified that William did not want to pay for all four years. William testified, as well, about his intentions: "The conversation I've had with my kids is that I would help as much as I can and we want to try to pay for two years and we want your mother to pay for a year and it's my philosophy that they should have a one-year expense." William did not testify that he was deprived of any benefit by his son's breach.

prevented William from making "substitute arrangements." Finally, the agreement itself does not require performance on a semester-by-semester basis, nor does it call for the forfeiture of obligations previously owed to the son (i.e., Fall 2012 expenses) for a breach occurring in a later semester. The agreement itself does not explicitly require the son to reimburse William for expenses incurred for a prior semester if the son ultimately does not obtain a "C" average in a later semester.[11]

Accordingly, even if William had not waived this affirmative defense, the record supports the trial court's judgment awarding Lori damages in the amount of her expenses incurred before the son's alleged breach. William's fourth issue is overruled.

## IV. CONCLUSION

Having overruled all of William's issues, we affirm the trial court's judgment.

/s/        Sharon McCally
               Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally. (Frost, C.J., concurring).

---

[11] William also acknowledged during his direct testimony that the clause regarding a "C" GPA does not provide guidance about "whether or not the contract is, at this point, null and void" due to the son's breach.