

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00129-CV

———————————————————

IN THE INTEREST OF J.A. AND A.A., CHILDREN

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-728697-23

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

This case involves the enforcement of an agreed child support review order executed in 2015 by Appellant Santos Raul Alvarez, Appellee Heather Hopper, and Appellee Office of the Texas Attorney General (OAG). After finding that Alvarez had failed to comply with the provisions of the 2015 child support order, the trial court entered an "Order Holding Respondent in Contempt for Failure to Pay Child Support and Medical Support, Granting Judgment, and for Commitment to County Jail," which Alvarez, proceeding pro se, now appeals.

We affirm the trial court's enforcement order.

## I. Background

In August 2022, Hopper filed a motion to enforce the 2015 child support order[1] alleging that Alvarez had failed to pay child support and medical support as required by the terms of the order. In March 2023, Hopper filed a third amended motion for enforcement listing the dates on which Alvarez failed to pay child support and medical support. In her motion, Hopper requested that for each violation alleged, the trial court hold Alvarez in contempt; jail him for up to 180 days, with each period of confinement to run and be satisfied concurrently; and fine him up to $500. She also asked the trial court to confirm child and medical support arrearages in the amount of $49,190.95; to render judgment plus interest, attorney's fees, and costs; and to order

---

[1]The order had been executed in Dallas County. Hopper filed a motion to transfer venue from Dallas County to Tarrant County, and the case was later transferred to Tarrant County.

income withholding. In response, Alvarez filed "Respondent and or Counter Claimant's Motion to Dismiss and 2nd Notice of Special Appearance," in which he referred to himself as both a "beneficiary of the Social Security Administration trust" and a "sovereign member of the people." He argued that the trial court lacked jurisdiction and asserted claims for "compromise and settlement," fraudulent conversion, duress, undue influence, and "prevention of enforcement of compromise."

On April 11, 2023, the trial court heard the motion to enforce, and Alvarez appeared pro se. The trial court granted judgment in favor of Hopper. In its enforcement order, the trial court found that Alvarez was in contempt for nonpayment of child and medical support; confirmed child support arrearages in the amount of $37,007.28; confirmed medical support arrearages in the amount of $13,089.01; assessed attorney's fees and costs against Alvarez; and ordered income withholding. The trial court committed Alvarez to the county jail for a period of 180 days for each violation and ordered each period of confinement to run and be satisfied concurrently. Additionally, the trial court

> ordered that punishment is deferred upon the following conditions: one, payment of current medical and child support and payment of the arrears in the amount of $236 a month, commencing May 1st, 2023, and payment of the medical support arrears in the amount of $116 per month, commencing May 1st, 2023.

3

Alvarez was ordered to return to court on June 13, 2023, "for the assessment and confinement for the punishment set forth above, should there be lack of compliance with" the deferral conditions in the enforcement order.

Before the June 13, 2023 hearing could occur, Alvarez filed his notice of appeal. He subsequently filed a one-page "Motion for Retrial," "Respondent's Motion for Retrial and 3rd Notice of Special Appearance," and a document titled "Violation Warning Denial of Rights Under Color of Law." Based on the record before us, it appears that the trial court did not rule or otherwise take any action on these filings and that Alvarez was not jailed for noncompliance with the enforcement order.

## II. Discussion

As a preliminary matter, we note that a pro se party is held to the same standard as a licensed attorney. *Amir-Sharif v. Mason*, 243 S.W.3d 854, 856 (Tex. App.—Dallas 2008, no pet.); *Maddox v. Hutchens*, No. 2-02-159-CV, 2003 WL 21983260, at *1 (Tex. App.—Fort Worth Aug. 21, 2003, no pet.) (per curiam) (mem. op.). While we are required to construe appellate briefs liberally, it is the party's responsibility to fully brief an argument and to provide record citations and relevant legal authority to support his position. *See* Tex. R. App. P. 38.1(i), 38.9; *Allegiance Hillview, L.P. v. Range Tex. Prod., LLC*, 347 S.W.3d 855, 873 (Tex. App.—Fort Worth 2011, no pet.). Our role is to review the arguments made and dispose of the appeal; we cannot search the record and research the law to put together the parties' arguments for them. *De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at

4

*9 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.); *see* Tex. R. App. P. 38.1(i). Likewise, when an appellant presents a list of long, multifarious issues that do not match up with arguments raised in the body of the brief, we need only address those arguments raised in the body of the appellant's brief. *See Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 841 n.1 (Tex. App.—Fort Worth 2003, pet. denied).

To the extent that Alvarez's issues do not match up with the arguments raised in the body of his brief[2] or that his issues are unsupported by argument and relevant legal authorities, those issues have been waived due to inadequate briefing. *See* Tex. R. App. P. 38.1(h) (requiring that, for an issue to be properly before this court, the issue must be presented in the body of an appellant's brief); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Allegiance Hillview*, 347 S.W.3d at 873; *Columbia Med. Ctr. of Las Colinas*, 122 S.W.3d at 841 n.1. We will address only the arguments properly before this court.

From what we can discern are his appellate issues, Alvarez (1) challenges the validity of the 2015 child support order; (2) complains of the OAG's involvement in the enforcement proceedings; (3) contends that he was denied his constitutional right

---

[2]In the "Issues presented" section of his brief, Alvarez lists five issues. In the body of his brief, however, he presents seven arguments that do not align with his "Issues presented."

5

to a jury trial; and (4) argues that the trial court erred by denying his motion for retrial.[3]

## A. Standard of Review

We review the trial court's ruling on a motion for enforcement under an abuse-of-discretion standard. *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *Id.*

## B. The 2015 Child Support Order

Alvarez's first, second, third, and seventh issues appear to attack the 2015 child support order itself:

> The appellant's first contention pertains to the notarization of a contract that was explicitly voided during a meeting with the child's mother, a representative of the Notary Republic [sic] for the [S]tate of Texas, and a representative of the Title 4-D child support company.
>
> . . . .
>
> The appellant's second concern revolves around the coercion, duress, and emotional distress experienced during the initial meeting. The appellant alleges that the atmosphere was fraught with tension, and

---

[3]Alvarez does not appear to challenge the contempt portion of the enforcement order. *Cf. In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) ("[C]ontempt orders are not appealable."). But to the extent that any of Alvarez's issues were intended to challenge the trial court's contempt finding, we would treat the appeal as a mandamus proceeding and deny relief and affirm the enforcement order. *Id.* ("When the contemnor is not jailed, the proper vehicle to challenge a contempt order is a writ of mandamus, which requires the contemnor to show that the trial court abused its discretion."); *In re M.H.*, No. 02-23-00253-CV, 2024 WL 273498, at *1 (Tex. App.—Fort Worth Jan. 25, 2024, orig. proceeding) (mem. op.) (treating petition seeking habeas relief as a mandamus proceeding).

the representatives present used coercive tactics, including threats of legal action and potential incarceration, to influence compliance with the contested contract.

> . . . .

> The apelant's [sic] third contention pertains to the absence of his signature on the contested contract, a matter of paramount importance. The appellant insists that the contract lacks his signature, raising questions about its validity. A notarized document should reflect the true intent of all parties involved.

> . . . .

> A fundamental legal principle that deserves specific attention in this case is the illegality of combining a trust in contract with a restraint of trade. The United States Code established that contracts that combine a trust element with a restraint of trade are inherently unlawful and unenforceable.

To support these claims, Alvarez attempts to cite the Uniform Commercial Code, the United States Code, and other unrelated, non-Texas authority discussing general contract principles.

Enforcement proceedings are separate from the initial child support proceedings. *Ochsner v. Ochsner*, 517 S.W.3d 717, 718 (Tex. 2016). Alvarez failed to challenge the validity of the 2015 child support order by direct appeal at the time it was entered, and the time for doing so has long passed. *See* Tex. R. App. P. 26.1; *In re D.S.*, 76 S.W.3d 512, 517 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Thus, Alvarez's attempted collateral attack on the 2015 child support order fails. *See D.S.*, 76 S.W.3d at 517 ("[O]ne can not collaterally attack an order he never appealed.").

Even if Alvarez could collaterally attack the 2015 child support order, child support agreements authorized by the Texas Family Code are not enforceable as contracts. Tex. Fam. Code. Ann. § 154.124(c) (stating terms of child support agreement order "may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as a contract"); *see Ex parte Hall*, 854 S.W.2d 656, 656–57 (Tex. 1993) (holding child support orders based on the Texas Family Code are enforceable by contempt); *In re A.S.*, No. 02-22-00196-CV, 2023 WL 3017658, at *5 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op.) ("Child[]support agreements are not like other long-term contracts." (citing *Hill v. Hill*, 819 S.W.2d 570, 572 (Tex. App.—Dallas 1991, writ denied))); *cf. Bruni v. Bruni*, 924 S.W.2d 366, 369 (Tex. 1996) (holding agreement to provide child support for children past age 18 who have graduated from high school, i.e., postmajority support, was enforceable in contract).[4] Accordingly, the order may be enforced by any remedy available for enforcement of a judgment, such as contempt, but not as a contract. *See* Tex. Fam. Code Ann. § 154.124(c). Alvarez's contract claims are therefore inapposite.

As for Alvarez's assertion that the 2015 child support order "lacks his signature," the record directly contradicts this claim. Not only did Alvarez sign the order, but the order itself confirms that he also "appeared in person" at the

---

[4]The 2015 child support order does not contain a postmajority support agreement, and the children have not reached the age of 18. *See Bartlett v. Bartlett*, 465 S.W.3d 745, 749 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (distinguishing child support from postmajority support).

negotiation conference and "agreed to the entry of the[] order[] *as evidenced by his signature.*" [Emphasis added.] Plus, he signed an affidavit acknowledging that he had read the order, that he understood its provisions, and that he approved its terms. And he attested to knowing that the failure to obey the order's terms could result in his being held in contempt. We therefore cannot say that the trial court abused its discretion by ruling against Alvarez on Hopper's motion for enforcement.

We overrule Alvarez's first, second, third, and seventh issues.

## C. The OAG's Involvement

Alvarez's fourth issue "concerns the involvement of the [OAG], which supported the child's mother's legal action. [He] asserts that profit may have been a motivating factor, potentially contradicting the principles outlined in the Texas Constitution." Alvarez's "argument" on this issue consists of one sentence: "The role of the [OAG] is critical in ensuring that justice is pursued, and its involvement should adhere to ethical standards and constitutional principles."

Apart from this conclusory assertion—from which his complaint is not entirely clear—Alvarez does not specifically state how the OAG allegedly failed to "adhere to ethical standards and constitutional principles" nor does he provide any substantive argument or citations to the record. Thus, he has forfeited his fourth issue due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284; *see also Amir-Sharif*, 243 S.W.3d at 856 ("A pro se litigant is held to the same standards

9

as licensed attorneys and must comply with applicable laws and rules of procedure."
[Emphasis removed.]); *Maddox*, 2003 WL 21983260, at *1 (similar).

We overrule Alvarez's fourth issue.

## D. No Right to a Jury Trial

In his fifth issue, citing to irrelevant United States Code provisions, Alvarez contends that his "repeated demands for a trial by a jury of peers[] invok[ed] rights enshrined in both the United States Constitution and the Constitution of Texas[,] . . . that due process should be upheld[,] and that a trial by a jury is a fundamental right."

In her motion to enforce, Hopper requested that Alvarez be "held in contempt, jailed for up to 180 days, and fined up to $500." When Alvarez demanded a jury trial at the enforcement hearing, the trial court informed him that he was not entitled to a jury trial because Hopper had requested "the maximum of 180 days." In the contempt portion of its enforcement order, the trial court set—but deferred—Alvarez's punishment at 180 days' confinement in the county jail for each violation, with each period of confinement to run and be satisfied concurrently.

If a contempt order imposes a fine of not more than $500 or confinement in the county jail for not more than six months or both, the punishment is characterized as "petty," and the contemnor is not entitled to a jury. *Taylor v. Hayes*, 418 U.S. 488, 495–96, 94 S. Ct. 2697, 2702 (1974); *Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex. 1976); *see* Tex. Gov't Code Ann. § 21.002(b) (providing maximum punishments

10

allowed for contempt of court). Here, because the sentence actually imposed was only 180 days in jail, Alvarez was not entitled to a jury trial. We overrule his fifth issue. *See Werblud*, 536 S.W.2d at 547.

## E. The Motion for Retrial

Alvarez's sixth issue "concerns the denial of [his] motion for retrial. [The] motion was filed in pursuit of justice and to address the multitude of errors and oversights in the lower court's judgment." He claims that his "plea for a retrial" was denied "without adequate justification."

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Hogue v. Propath Lab'y, Inc.*, 192 S.W.3d 641, 647 (Tex. App.—Fort Worth 2006, pet. denied). A motion for new trial must specify the grounds supporting the requested relief in such a way that the trial court may identify and understand the argument. Tex. R. Civ. P. 321. Generality must be avoided because objections phrased in general terms shall not be considered by the trial court. Tex. R. Civ. P. 322. For example, general objections that the trial court erred in excluding or admitting evidence will not be considered by the trial court. *Id.* A motion for new trial that does not conform to the requisites of Rules 321 and 322 preserves no error for appeal. *Neily v. Aaron*, 724 S.W.2d 908, 911 (Tex. App.—Fort Worth 1987, no writ).

Alvarez's motion for new trial alleged that that he had not been given "a fair and impartial trial," that the evidence against him had been "biased and unfair," that Hopper had received "preferential treatment" from the trial court, and that the trial

11

court had shown bias by denying Alvarez's request for a jury trial, by "refus[ing] to allow certain evidence to be presented," and by "other acts." Alvarez did not explain what evidence was "biased and unfair," he did not identify the evidence he sought to present, nor did he explain how Hopper allegedly received "preferential treatment." He also failed to describe any "other acts" that demonstrated bias by the trial court. "There is a strong policy behind the requirements of [R]ules 321 and 322." *Neily*, 724 S.W.2d at 911. Alvarez's motion for new trial did not conform with the requisites of Rules 321 and 322, and as a result, the motion preserves no issue for appeal. *See id.*

To the extent that the motion for new trial preserved error regarding the trial court's denial of Alvarez's request for a jury trial, as we have explained, Alvarez was not entitled to a jury trial. Under these circumstances, we conclude that the trial court did not abuse its discretion by allowing Alvarez's motion for retrial to be overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

We overrule Alvarez's sixth issue.

## III. Conclusion

Having overruled all of Alvarez's appellate issues, we affirm the trial court's enforcement order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 15, 2024